# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NAEEM BETZ<br>4244 HILDRETH ST. SE<br>WASHINGTON, D.C. 20019-9998<br><br>PRO SE / PLAINTIFF<br><br>v.<br><br>(NSAC) NATIONAL STUDENT AID CARE<br>523 NORTH GRAND AVE.<br>SANTA ANA, CA 92701<br><br>DEFENDANT / RESPONDANT | VERIFIED COMPLAINT FOR DAMAGES, STATUTORY, PUNITIVE, ACTUAL, FEES AND EXPENSES, COSTS, AND OTHER RELATED RELIEF<br><br>JURY TRIAL DEMANDED<br>12 JURORS<br><br><br>Case: 1:17-cv-00614           (F-Deck)<br>Assigned To : Mehta, Amit P.<br>Assign. Date : 4/5/2017<br>Description: Pro Se Gen. Civil   Jury Demand |

**COMES NOW,** the Plaintiff Naeem Betz complaining of the defendant and as follows;

## COMPLAINT
## NATURE OF ACTION

Plaintiff, Naeem Betz, individually, hereby sues Defendant(s), (NSAC) NATIONAL STUDENT AID CARE et. al, for violations of the Telephone Consumer Protection Act (TCPA).47 USC 227 et seq.

RECEIVED

APR -5 2017

Clerk, U.S. District and
Bankruptcy Courts

**PRELIMINARY STATEMENT**

1. This is an action for damages and injunctive relief brought by Plaintiff Naeem Betz against Defendant(s) (NSAC) NATIONAL STUDENT AID CARE et. al for violations of the Telephone Consumer Protection Act (TCPA) 47 USC § 227(c)(5).

2. Upon belief and information, Plaintiff contends that many of these practices are widespread for the Defendant. Plaintiff Naeem Betz intends to propound discovery to Defendant (NSAC) NATIONAL STUDENT AID CARE identifying all automated telephone equipment (i.e., automatic telephone dialing systems, or (ATDS), and predictive telephone dialing systems, or (PTDS) numbers used in placing or making telephone calls to consumers like Plaintiff Naeem Betz cellular telephone without prior express written consent or prior express consent.

3. Plaintiff contends that the Defendant have violated such laws by repeatedly harassing Plaintiff by calling his wireless telephone number ending in 8063 which is registered on the (FTC) National Do Not Call Registry since April 22, 2012. Anyone whose numbers are registered on the DNC list that has received two telemarketing calls within a twelve-month period can sue for all calls including the first. It does not matter if calls are live, pre-recorded or robo calls. The DNC provision is a powerful section of the TCPA because it prohibits calls to both cell phone and residential lines, which are registered on the federal or company specific do-not call lists. It is not necessary to prove the telemarketer used an ATDS or used artificial or pre-recorded voice messages. Live calls to numbers registered on the DNC are prohibited.

## JURISDICTION AND VENUE

4. Jurisdiction of this Court arises under 47 U.S.C. §227(b)(3), (c)(5), 28 U.S.C. § 1331 and supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

5. Venue is proper pursuant to 28 U.S.C. §1391b. Venue in this District is proper in that the Plaintiff resides here, the Defendants transact business here, and the conduct complained of occurred here in Washington, D.C. the Federal District Capital of the United States of America.

6. This is an action for damages which exceed seventy-five thousand.

## PARTIES

7. Plaintiff, Naeem Betz, is a natural person and is a resident of the District of Columbia, Washington which is the Federal District Capital of the United States of America.

8. Upon information and belief Defendant, (NSAC) NATIONAL STUDENT AID CARE is a domestic limited liability corporation, authorized to do business in Washington, District of Columbia.

9. Upon information and belief Defendant (NSAC) NATIONAL STUDENT AID CARE is a "person" domestic limited liability corporation, authorized to do business in Washington, District of Columbia under several d/b/a names CSADVO LLC, National Student Aid Care, National Student Aid Center US Doc Prep.

## LEGAL BASIS FOR THE CLAIMS

10. The Federal Communications Commission plays a crucial role in helping consumers stop unwanted calls and text messages. Under the Telephone Consumer Protection Act, the FCC provides clarity on the law, sets rules, takes enforcement actions, and provides resources for

1 | consumers.



Consumer Help Center

Rules and Resources for Dealing with Unwanted Calls and Texts

Consumers can take back their permission to be called or texted in any reasonable way. A calling company cannot require someone to fill out a form and mail it in as the only way to revoke consent.

*"See Attached Exhibit E – (FCC) Federal Communications Commission - Consumer Help Resources Know your Rights: The Rules on Robocalls and Robotexts."*

Congress enacted the TCPA in 1991 to address certain practices thought to be an invasion of consumer privacy and a risk to public safety. The TCPA and the Federal Communications Commission's ("FCC") implemented rules to prohibit: (1) making telemarketing calls using an artificial or prerecorded voice to residential telephones without prior express consent; and (2) making any non-emergency call using an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice to a wireless telephone number without prior express consent.

    11. If the call includes or introduces an advertisement, or constitutes telemarketing, consent must be in writing. Calls that include non-marketing messages require consent, but not written consent. The TCPA grants consumers a private right of action, with a provision for ($500) or the actual monetary loss in damages for each violation, whichever is greater, and treble damages ($1500) for each willful or knowing violation, as well as injunctive relief.

    12. Since the TCPA's passage in 1991, the FCC has taken multiple actions implementing and interpreting the TCPA and has issued numerous Declaratory Rulings clarifying specific aspects of

the TCPA. The most recent, FCC Omnibus Order of July 10, 2015, (the "Order") provided further protection to consumers by, among other things, clarifying that ATDS is nearly any dialing system, confirming liability attaches to calls made to the wrong number or reassigned number, and clarifying consumers may revoke consent through reasonable methods.

13. In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, FCC 15–72, 30 F.C.C.R. 7961, (July 10, 2015), available at https://www.fcc.gov/document/tcpa-omnibus-declaratory-ruling-and-order. The Order defines an "auto-dialer" as equipment/software that has the future capacity to dial randomly or sequentially. "In other words, the capacity of an auto dialer is not limited to its current configuration but also includes its potential functionalities." The Order clarifies the meaning of "capacity" and that "any call" made using the device with the capacity to serve as an ATDS requires consent under the TCPA, even if the caller is not "actually...using those functionalities to place calls" at the time.

Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered. 47 C.F.R. § 64.1200(f)(8).

14. The Order also states that calls placed to the wrong number or a reassigned number are made with knowledge of the error after the first call; and consumers may revoke consent through any reasonable method, including orally: "[w]e clarify, however, that callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to

the new subscriber. If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such;" "[c]onsumers generally may revoke, for example, by way of a consumer-initiated call, directly in response to a call initiated or made by a caller, or at an in-store bill payment location, among other possibilities."

15. Furthermore, the TCPA established the National Do-Not-Call List and also mandates all businesses that place calls for marketing purposes maintain an "internal" do-not-call list ("IDNC"). See 47 C.F.R. § 64.1200(d). The IDNC is "a list of persons who request not to receive telemarketing calls made by or on behalf of that [seller]." Id. The TCPA prohibits a company from calling individuals on its IDNC list or on the IDNC list of a seller on whose behalf the telemarketer calls, even if those individuals' phone numbers are not on the National Do-Not-Call Registry. Id. At § 64.1200(d)(3),(6). Any company or someone on the company's behalf, who calls a member of the company IDNC is liable to that person under the TCPA. The called party is then entitled to bring a private action under the TCPA for monetary and injunctive relief.

16. Finally, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration, 23 FCCR cd. 559, 565, ¶ 10 (Jan. 4, 2008); Birchmeier v. Caribbean Cruise Line, Inc., 2012 WL 7062748 (Dec. 31, 2012). Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call. Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

## FACTUAL ALLEGATIONS

17. From January 2nd, 2017 to March 10th, 2017 (NSAC) NATIONAL STUDENT AID CARE violated the TCPA by calling Plaintiff(s) Naeem Betz cell phone 202-XXX-8063, "11" plus times without prior express written consent or prior express consent. Defendant(s) National Student Aid Center, (NSAC) has demonstrated willful or knowing noncompliance with 47 USC § 227(c)(5) by calling Plaintiff Na'eem Betz wireless telephone number 202-XXX-8063 at least "11" plus times which is registered on the National Do Not Call Registry (DNC) since April 22,2012. Plaintiff's number, which is assigned to a cellular telephone service. *"See Attached Exhibit A - Screenshots of Cellular Telephone Call Records"* *"See Attached Exhibit D - The email confirmation sent from the (FTC) Federal Trade Commission Verify@donotcall.gov to Plaintiff Naeem Betz confirming cellular telephone registry on the (FTC) National Do Not Call Registry on a number ending in 8063 on April 22, 2012." If any alleged prior written consent or prior express consent was gave to the Defendant it was REVOKED in several reasonable ways* by means of Plaintiff calling the Defendant directly on January 27th, 2017 at 1:34pm, January 31st, 2017 at 12:43PM (46s).

18. *"See Attached Exhibit B - Screenshots of Cellular Telephone TEXT Records REVOKING ANY ALLEGED PRIOR EXPRESS CONSENT".* Plaintiff also directly **REVOKED** any alleged consent by TEXT by replying to the Defendants unauthorized text / call messages on January 25th, 2017 at 3:04pm, by TEXT messaging to the Defendants text thread," I AM SAYING THIS FOR THE SECOND TIME" I DO NOT CONSENT TO THESE TELEMARKETING CALLS OR TEXTS …at January 27th, 2017 at 8:24am. *"See Attached Exhibit B - Screenshots of Cellular Telephone TEXT Records REVOKING ANY ALLEGED PRIOR EXPRESS CONSENT".* Plaintiff again REVOKED any alleged consent by TEXT by

replying to the Defendants unauthorized text messages on January 25th, 2017 at 3:04pm by TEXT messaging to the Defendants text thread, "YOU DO NOT HAVE MY EXPRESS CONSENT...PLEASE STOP CALLING AND TEXTING ME" ... at January 27th, 2017 at 8:26am *"See Attached Exhibit B - Screenshots of Cellular Telephone TEXT Records REVOKING ANY ALLEGED PRIOR EXPRESS CONSENT".*

19. Defendant continued to call thereafter Plaintiff(s) cell phone, and text by demonstrating willful or knowing non-compliance with 47 USC § 227(c)(5) by calling, texting Plaintiff Naeem Betz wireless telephone number 202-XXX-8063 which is registered on the National Do Not Call Registry (DNC) since April 22, 2012. Plaintiff(s) number, which is assigned to a cellular telephone service. *"See Attached Exhibit D - The email confirmation sent from the (FTC) Federal Trade Commission Verify@donotcall.gov to Plaintiff Naeem Betz confirming cellular telephone registry on the (FTC) National Do Not Call Registry on a number ending in 8063 on April 22, 2012."*

20. Plaintiff listened to several of the unauthorized voicemails which had an artificial or prerecorded voice on Monday, January 31st, 2017, at 10:41 AM . The pre-recorded voice messages via an automatic dialing system to contact were about 15-16 seconds long depending on the initial silence or few second delay until the automated / prerecorded voice began speaking the same message with pitch or tone. All of these unauthorized calls all had the same type of prerecorded voice left on Plaintiff Naeem Betz cellular telephone voicemail by saying in a male voice and I quote, **"YOU HAVE BEEN PREAPPROVED FOR STUDENT LOAN FORGIVENESS, PLEASE CALL 949 201-2330 AGAIN THAT IS 949 201-2330 THANK YOU"**. The Defendant never disclosed or identified who they were and what business entity was initiating or making these unauthorized calls to Plaintiff cell phone.

21. Plaintiff has at least "9" of the prerecorded unauthorized voicemails which all repeated the same 15-16 seconds message in a male voice by saying and I quote,

**"YOU HAVE BEEN PREAPPROVED FOR STUDENT LOAN FORGIVENESS, PLEASE CALL 949 201-2330 AGAIN THAT IS 949 201-2330 THANK YOU".**

22. On Monday, February 13st, 2017, at 12:23 AM (50s) and on Wednesday February 15, 2017, at 11:26 AM (5m 3s) Plaintiff called the Defendants number 949-201-2330 which was left on Plaintiff cellphone voicemail by the "9" prerecorded voice messages.) Plaintiff finally was able to speak with a several representatives for the company named (NSAC) NATIONAL STUDENT AID CARE who continued to give Plaintiff the run around by transferring Plaintiff to several different quality control managers who were rude and hostile. Numerous of these customer representatives or agents tried to hide or disguise their answers to Plaintiff questions by stating that the Defendant does not have a website. Plaintiff called the Defendant at least 4 times before a customer representative or agents named (Dave) finally answered Plaintiff questions with some clarity and specifics related to a company website for the Defendant (NSAC) NATIONAL STUDENT AID CARE. Eventually the Defendant(s) customer representatives or agents continued to hang the phone up in Plaintiff(s) face. Nonetheless the Defendant kept calling and texting Plaintiff cellular telephone unauthorized with a total disregard of the law.

23. Telemarketing Calls to "Do-Not-Call" … "DNC" Numbers Prohibited – 47 USC 227(c)(5)

This section only applies to telephone solicitation calls. Anyone whose numbers are registered on the DNC list that has received two telemarketing calls within a twelve-month period can sue for all calls including the first. It does not matter if calls are live, pre-recorded or robo calls.

24. The DNC provision is a powerful section of the TCPA because it prohibits calls to both cell phone and residential lines, which are registered on the federal or company specific do-not call

lists. It is not necessary to prove the telemarketer used an ATDS or used artificial or pre-recorded voice messages. Live calls to numbers registered on the DNC are prohibited.

The best part about DNC violations from the consumer perspective is that the Sixth Circuit Court of Appeals has held that damages under this section may be stacked on top of the TCPA 227(b) section covering "calls to cell phones." This means that the consumer can get up to $3000.00 per call for violations of the cell phone prohibitions and the DNC provisions. Charvat v NMP, LLC, 656 F. 3d 440 (6th Cir. 2011).

25. TCPA Damages: According to the TCPA, as codified in 47 U.S.C. § 227, an individual or entity has a private right of action to bring an action based on a violation of a subsection of the Act. (47 U.S.C. § 227(b)(3) (calls to a cell phone). An individual or entity may bring an action to enjoin such violations, for monetary loss for such violations, for $500.00 for each such violation, whichever is greater, or for both injunction and damages. If the court finds that the defendant willfully or knowingly violated the regulations under the TCPA, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount of the statutory compensatory damages above.

26. The body of case law addressing the available damages for a plaintiff suing under a TCPA private right of action reflects the general rule that where the court finds that the defendant caller has violated a subsection of the Act, it will at least award to the plaintiff $500 per violation as required by the Act.

27. Furthermore, when the facts of the specific case rise to the level of showing a knowing or willful violation of the Act, the court will, in its discretion and within its jurisdiction, also award exemplary or treble damages that may be as much as three times the damages award. In determining willfulness, the court looks at whether the defendant's actions show its knowledge of

the facts that constitute the offense (knowing); at the prior interactions between the plaintiff and the defendant; and at whether the defendant attempted to stall, evade or avoid its obligations under the TCPA.

28. Willful and Knowing: Treble Damages One of the best arguments for trebling damages is the standard set forth in 47 USC § 312 F, Administrative sanctions, which is part of the same section of the United States Code that the TCPA falls under.

(f) "Willful" and "repeated" defined

For purposes of this section:

(1) The term "willful", when used with reference to the commission or omission of any act, means the conscious and deliberate commission or omission of such act, irrespective of any intent to violate any provision of this chapter or any rule or regulation of the Commission authorized by this chapter or by a treaty ratified by the United States.

(2) The term "repeated", when used with reference to the commission or omission of any act, means the commission or omission of such act more than once or, if such commission or omission is continuous, for more than one day.

29. Plaintiff finally was able to speak with a live representative or agents for the Defendant(s) company (NSAC) NATIONAL STUDENT AID CARE who could not specifically answer Plaintiff questions regarding how the Defendant either received prior written consent or express written consent to call Plaintiff(s) cellular telephone 11 plus times unauthorized. ***"See Attached Exhibit A - Screenshots of Cellular Telephone Call Records".*** Several of these customer representatives or agents stated very directly that Plaintiff cellular telephone number would be removed or blocked from their internal call list or system but nonetheless the Defendant kept calling or texting the Plaintiff. These calls occurred on "continuous days," and on multiple

occasions were several times a day. These calls caused emotional damage, extra electricity usage, extra battery usage and were a direct invasion of privacy to Plaintiff Naeem Betz. Plaintiff stated clearly and specifically by saying, "don't call this number your do not have my prior express written, prior express consent or verbal consent, "and I hung the cell phone up after I made that statement. The Defendant kept calling Plaintiff(s) cellular telephone using an automated dialing system (ATDS) also known as (ADAD) which stands for Automatic Dial Announcing Device Defendant (NSAC) NATIONAL STUDENT AID CARE. ***"See Attached Exhibit B - District of Columbia under D.C. CODE § 34–1701.*** Ban on automated telephone dialing systems." Currently (ADAD) Automatic Dial Announcing Device are banned in the District of Columbia under D.C. CODE § 34–1701. Ban on automated telephone dialing systems for commercial solicitation; definitions; prohibition; exceptions.

    30. Courts may treble the damages award if the court finds that defendant's violations were committed "willfully or knowingly." 47 U.S.C. § 227(b)(3). Although neither the TCPA nor the FCC regulations define the terms "willfully or knowingly", courts have generally interpreted willfulness to imply only that an action was intentional. Smith v. Wade, 461 U.S. 30, 41 n.8 (1983). While the TCPA does not define willful, the Communications Act of 1943, of which the TCPA is a part, defines willful as "the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision, rule or regulation." In Dubsky v. Advanced Cellular Communications, Inc., No. 2008 cv 00652, 2004 WL 503757, at * 2 (Ohio Com. Pl. Feb. 24, 2004), the court found that in the context of the TCPA, the term acting "willfully" means that "the defendant acted voluntarily, and under its own free will, regardless of whether the defendant knew that it was acting in violation of the statute." 47 U.S.C.§ 227(b)(3).

31. The TCPA defines an ATDS as "equipment which has the capacity — (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). In a 2015 order, the FCC held that the "TCPA's use of `capacity' does not exempt equipment that lacks the `present ability' to dial randomly or sequentially," and that "the capacity of an autodialer . . . also includes its potential functionalities." See In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 30 F.C.C. Rcd. 7961, 7974 (July 10, 2015) ("2015 Order").

32. **The list of the "11" plus "INCOMING" Cellular Telephone Calls placed by the Defendant (NSAC) NATIONAL STUDENT AID CARE**

**1. INCOMING CALL - Wednesday - January 2, 2017, 10:33 AM**

**2. INCOMING CALL - Wednesday - January 18, 2017, 11:58 AM**

**3. INCOMING CALL / TEXT - Wednesday, January 25, 2017, 3:04 PM**

**4. INCOMING CALL - Thursday, January 26, 2017, 4:17 PM**

**OUTGOING CALL / TEXT - Friday, January 27, 2017, 8:22 AM**

**OUTGOING CALL / TEXT - Friday, January 27, 2017, 8:24 AM**

**OUTGOING CALL / TEXT - Friday, January 27, 2017, 8:26 AM**

**5. INCOMING CALL - Friday, January 27, 2017, 1:34 PM**

**OUTGOING CALL- (46s) - Tuesday, January 31, 2017, 12:43 PM VOICEMAIL**

**6. INCOMING CALL - Monday, February 06, 2017, 10:38 AM VOICEMAIL**

**7. INCOMING CALL - Wednesday, February 08, 2017, 12:35 PM VOICEMAIL**

**8. INCOMING CALL - Thursday, February 09, 2017, 10:07 AM VOICEMAIL**

**9. INCOMING CALL - Monday, February 13, 2017, 12:11 PM VOICEMAIL**

**OUTGOING CALL - (5s) - Monday, February 13, 2017, 12:19 PM**

OUTGOING CALL - (50s) - Monday, February 13, 2017, 12:23 PM

10. INCOMING CALL - Monday, February 15, 2017, 11:21 AM VOICEMAIL

OUTGOING CALL - (5m 3s) Wednesday, February 15, 2017, 11:26 AM

OUTGOING CALL - (4m 38s) Wednesday, February 15, 2017, 11:33 AM

OUTGOING CALL - (3m 18s) Wednesday, February 15, 2017, 11:39 AM

11. INCOMING CALL / TEXT - Friday, 10, March 2017, 11:59 AM

## COUNT I
## THE TELEPHONE CONSUMER PROTECTION ACT
## VIOLATIONS OF 47 U.S.C.§227(c)(5)
## FOR CALLS PLACED TO NUMBERS LISTED ON THE DO NOT CALL REGISTRY

33. Plaintiff alleges and incorporates the information in paragraphs 1 through 32.

34. Defendant(s) has demonstrated willful or knowing non-compliance with 47 USC § 227(c)(5) by calling Plaintiff Naeem Betz wireless telephone number 202-XXX-8063 that has been placed on the National Do Not Call Registry (DNC) since April 22, 2012, Plaintiff's number, which is assigned to a cellular telephone service. The Plaintiff Naeem Betz has never consented in writing or verbally to Defendant(s) THE (NSAC) NATIONAL STUDENT AID CARE by express written consent to call Plaintiff cellular phone. Plaintiff also directly REVOKED any alleged consent by TEXT by replying to the Defendants unauthorized text / call messages on January 25th, 2017 at 3:04pm, by TEXT messaging to the Defendants text thread," I AM SAYING THIS FOR THE SECOND TIME" I DO NOT CONSENT TO THESE TELEMARKETING CALLS OR TEXTS …at January 27th, 2017 at 8:24am.

35. "*See Attached Exhibit B - Screenshots of Cellular Telephone TEXT Records REVOKING ANY ALLEGED PRIOR EXPRESS CONSENT*". Plaintiff again REVOKED any alleged consent by TEXT by replying to the Defendants unauthorized text messages on January

25th, 2017 at 3:04pm by TEXT messaging to the Defendants text thread, "YOU DO NOT HAVE MY EXPRESS CONSENT…PLEASE STOP CALLING AND TEXTING ME" … at January 27th, 2017 at 8:26am *"See Attached Exhibit B - Screenshots of Cellular Telephone TEXT Records REVOKING ANY ALLEGED PRIOR EXPRESS CONSENT". "See Attached Exhibit A - Screenshots of Cellular Telephone Call Records" "See Attached Exhibit B - District of Columbia under D.C. CODE § 34–1701. Ban on automated telephone dialing systems." "See Attached Exhibit D - The email confirmation sent from the (FTC) Federal Trade Commission Verify@donotcall.gov to Plaintiff Naeem Betz confirming cellular telephone registry on the (FTC) National Do Not Call Registry on a number ending in 8063 on April 22, 2012." "See Attached Exhibit E – (FCC) Federal Communications Commission - Consumer Help Resources Know your Rights: The Rules on Robocalls and Robotexts."*

registrant's signed, written agreement to be contacted by the telemarketer. Id. § 64.1200(c)(2)(ii). The written agreement must also include the telephone number to which the calls may be placed. Id.

    36. A person whose number is on the Registry and has received more than one telephone solicitation within any twelve-month period by or on behalf of the same entity in violation of the TCPA can sue the violator and seek the same statutory damages available under § 227(b) – the greater of actual damages or $500, a figure that may be trebled for willful or knowing violations. 47 U.S.C. § 227(c)(5).

    37. Each Defendant violated 47 U.S.C. § 227(c) by sending, either directly or through the actions of others, telephone solicitation calls to telephone numbers listed on the National Do Not Call Registry. The TCPA imposes liability on entities that do not directly place illegal calls. It has long been the law that a seller of goods or services can be liable for TCPA violations even if the

seller does not directly place or initiate the calls. As explained by the FCC, the TCPA and its regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations."

38. See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Mem. and Order, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995). The FCC reiterated this principle in 2005 when it stated that "a company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules, and calls placed by a third party in the name of that company are treated as if the company itself placed the call."

39. See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Request of State Farm Mutual Automobile Insurance Company for Clarification and Declaratory Ruling, Declaratory Ruling, 20 FCC Rcd. 13664, 13667 ¶ 7 (2005). The FCC reaffirmed this in 2013, when it held (a) with respect to violations of § 227(b), a seller may be liable under principles of apparent authority, actual authority, and ratification for telemarketing violations placed by third parties, and (b) with respect to violations of § 227(c), a seller may be liable under those same principles, and, under the express terms of the statute, for calls placed "on behalf of" the seller. In re Joint Pet. Filed by Dish Network, 28 FCCR 6574 (2013).

40. Violation of § 227(c) for calls placed to numbers listed on the FCC - National Do Not Call Registry, each Defendant violated 47 U.S.C. § 227(c) by sending, either directly or through the actions of others, telephone solicitation calls to telephone numbers listed on the FCC - National Do Not Call Registry.

41. Defendant(s) has committed "11" plus separate violations of 47 USC § 227(c) and Plaintiff is entitled to damages of $500 per violation pursuant to 47 U.S.C. § 227(b) – the greater of actual damages or $500, a figure that may be trebled for willful or knowing violations up to $1500

47 U.S.C. § 227(c)(5). The acts and practices alleged in Paragraphs 1-32 constitute violations of section 47 U.S.C. § 227(c)(5).

42. The frequency of this unauthorized cellular telephone calls have facial plausibility that Plaintiff Naeem Betz has plead as factual content that will allow the court to draw the reasonable inference that the Defendant is liable for their *unlawful* conduct and behavior. Assuming the truth of Plaintiffs factual allegations, the Court will find all claims to be facially plausible.

43. **WHEREFORE,** Plaintiff demands judgment for monetary damages against the Defendant (NSAC) NATIONAL STUDENT AID CARE one million dollars for actual or statutory damages, punitive damages, attorney's fees and costs.

44.                 **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury of all issues so triable as a matter of law. Respectfully submitted this 4th day of April, 2017.

## VERIFICATION OF COMPLAINT AND CERTIFICATION
### (DISRTICT OF COLUMBIA)

Plaintiff, Naeem Betz, states as follows:

I am the Plaintiff in this federal civil proceeding.

I believe that this Civil Federal Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification or reversal of existing law.

I believe that this Civil Federal Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint. I have filed this Civil Federal Complaint in good faith and solely for the purposes set forth in it. Each and every exhibit I have provided which has been attached to This Civil Federal Complaint is a true and correct copy of the original.

Except for clearly indicated redactions made by my Plaintiff Naeem Betz where appropriate, I have not altered, changed, modified or fabricated these exhibits.

Pursuant to 28 U.S.C. § 1746(2), Naeem Betz, hereby declare (or certify, verify or state) under penalty of perjury that the foregoing is true and correct.

_____
Naeem Betz
Plaintiff, In Propria Persona
ALL RIGHTS RESERVED

DATE: April 04, 2017

NAEEM BETZ
4244 HILDRETH ST.SE
WASHINGTON, D.C. 20019-9998
nobetzo@gmail.com

NAEEM BETZ
P.O. BOX 15714
WASHINGTON, D.C. 20003-9998

# CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of April, 2017, I filed the foregoing overnight mailed by (UPS) United States Postal service delivered to The District of Columbia Clerk of Court, the CM/ECF System which will then send a notification of such filing. I further state under oath that I caused the forgoing, to be served on the parties listed below by service of process, United States Marshall Service, United Postal States, Fed Ex, United States Postal Service Certified Mail or Priority Mail, postage prepaid as a courtesy, on the following:

I certify that a copy of the Summons and Complaint will be served upon the Defendant party and or registered agent below in compliance with FRCP Rule 4; Pursuant to Local Civil Rules.

(NSAC) NATIONAL STUDENT AID CARE
523 North Grand Ave.
Santa Ana, CA 92701
info@nsa-care.us
http://www.nationalstudentaidcenter.us
Phone: 949-201-2330
Fax: 1-888-863-7622

Alternate Business Names
National Student Aid Care
CSADVO LLC
National Student Aid Center US Doc Prep

Defendant(s) Registered Agent
IN CARE OF: CSADVO LLC, (NSAC) NATIONAL STUDENT AID CARE
ROBERT KIM
3075 SCHOLARSHIP
IRVINE CA 92612

DATE: April 04, 2017

_____
Naeem Betz
Plaintiff, In Propria Persona
ALL RIGHTS RESERVED